FIRESTONE GREENBERGER PLLC
*Attorneys for Plaintiff*
Jordan Greenberger
jg@firegreenlaw.com
104 West 40th Street, 4th Floor
New York, NY 10018
(212) 597-2255

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANNY ABOSCH, | Case No. 25 – cv - 4522 |
| Plaintiff, | |
| -against- | **COMPLAINT** |
| VITAL THEATRE COMPANY, INC. and STEPHEN SUNDERLIN, | |
| Defendants. | |

Plaintiff Danny Abosch ("Plaintiff" or "Abosch"), for his complaint against defendants Vital Theatre Company, Inc. ("Vital") and Stephen Sunderlin ("Sunderlin") (with Vital, "Defendants"), pleads the following:

**Preliminary Statement**

1.      This is an action for copyright infringement arising out of Defendants' 2024 production of the musical *Fancy Nancy The Musical* in Manhattan.  Plaintiff is a co-author and co-owner of the copyright in *Fancy Nancy The Musical*.  Vital is a theater producer, and Sunderlin is Vital's founding producing artistic director and a member of its board.

2.      Pursuant to a 2012 agreement between Vital and the co-authors of *Fancy Nancy The Musical* (the "Play"), Defendants produced and presented an initial production of the Play in 2012.  A condition of the agreement was that after the initial production of the Play had been running for three weeks, Defendants were required to obtain the authors' permission before

making changes to the Play.  The Play had its initial run (which was more than three weeks), and Defendants subsequently produced and presented the Play in later years.

3.      In 2024, Defendants produced and presented another version of *Fancy Nancy The Musical* (the "2024 Version").  However, the 2024 Version contained numerous changes from the original Play, including material changes like cutting various scenes and characters.

4.      Defendants never requested or obtained permission to make those changes in the 2024 Version.  Defendants' unauthorized alterations to the Play, and exploitations of the 2024 Version, constitutes copyright infringement.

## Parties

5.      Plaintiff is an individual residing in New York, New York.

6.      Vital is, on information and belief, a New York not-for-profit corporation with its principal place of business located in New York, New York.

7.      Sunderlin is, on information and belief, an individual residing at 148 West 76th Street, #4A, New York, NY 10036, and the artistic director and managing director of Vital.

## Jurisdiction and Venue

8.      This is an action arising under the Copyright Act (17 U.S.C. § 101 et seq.), and the Declaratory Judgment Act (28 U.S.C. § 2201 et seq.).  The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).  The court has supplemental jurisdiction over any related state law claim pursuant to 28 U.S.C. § 1367.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)- (c) and § 1400(a) because, *inter alia*, the events giving rise to the claims occurred in this district, Defendants engaged in infringement in this district, and Defendants are subject to personal jurisdiction in this district.

## Facts Applicable To All Causes

10.     Pursuant to an agreement dated as of April 24, 2012 (the "Agreement"), Vital commissioned Abosch and non-party Susan DiLallo (with Abosch, the "Authors") to write the Play, which is an authorized theatrical derivative of the *Fancy Nancy* children's book series.  A true and correct copy of the Agreement is annexed hereto as <u>Exhibit 1</u>.

11.     Authors wrote the Play.

12.     Section 2.1 of the Agreement provides, in pertinent part, that the Authors "…shall own the Play and shall have the right to approve changes…"

13.     Section 10 of the Agreement provides in pertinent part: "Copyright in the Play…shall be held in the Author's name, and Author shall be deemed the sole owner thereof. … No changes shall be made to the Play after third weekend of public performances without Author's prior written consent."

14.     The contractual restriction on changing the play constitutes a condition of the rights granted to Vital in the Agreement.

15.     Authors obtained a federal copyright registration for the Play on or about December 4, 2012.  The copyright registration identifies Authors as both the authors of and the copyright claimants to the Play.  *See* Registration Number PAu003651193 (<u>Exhibit 2</u>).

16.     Authors also obtained a certificate of registration for the Original Off-Broadway Cast Recording of the Play.  *See* Registration No. SR0000723479 (effective April 10, 2013) (<u>Exhibit 3</u>).

17.     Pursuant to the Agreement, Vital was granted rights to produce and present an initial production of the Play, and if certain conditions were met then Vital also was granted rights relating to subsequent productions of the Play.  Agreement §§ 5.1-5.3.

18.     Pursuant to section 5.2 of the Agreement, subject to certain conditions having been satisfied, Vital was granted "the *exclusive* right to produce, present, move or tour the Play or to present Subsequent Productions of the Play for an initial period of five (5) years after the close of the Initial Production."  (Emphasis added.)

19.     Pursuant to sections 5.2 and 5.3 of the Agreement, if Vital elected not to produce the Play in any year during that five year period, then Vital nevertheless retained the right to present Subsequent Productions of the Play on a *non-exclusive* basis for ten years following the date that Vital's rights became non-exclusive.

20.     The Agreement also granted Vital rights to certain royalties from Authors' own exploitations of Subsidiary Rights for a period of time.  Agreement, § 13.  The term "Subsidiary Rights" was defined in section 1.14 of the Agreement.

21.     Vital agreed to notify Authors (in writing) prior to the start of each such production year, by July 31st, whether it would be producing the Play and if so where and when each production would be.  Agreement, § 5.2.

22.     Vital produced and presented an initial production of the Play in or about 2012, which closed in 2013.

23.     Vital produced and presented productions of the Play in some, but not all, subsequent years.

24.     On information and belief, Vital did not produce or present productions of the Play in one or more years during the initial period of five (5) years after the close of the Initial Production.  Additionally, Vital failed to provide notice prior to the start of each such production year, by July 31st, whether it would be producing the Play and if so where and when each production would be.  Agreement, § 5.2

25.    Accordingly, Vital's rights changed to non-exclusive under section 5.2 of the Agreement. The change from exclusive to non-exclusive occurred in or about 2015.

26.    However, on information and belief Defendants have refused to acknowledge to Authors and certain third-parties that the exclusivity period terminated, and Defendants statements have caused confusion with third-parties and created a justiciable controversy as to whether Authors can exploit the Play without Vital's consent.

27.    In 2024, Defendants produced and presented what it billed and promoted as the Play. On information and belief, the 2024 production was performed on March 16th through May 18th, 2024, at the Actors Temple Theatre located at 339 West 47th Street, New York, NY.

28.    However, Defendants' 2024 production was not the original Play.

29.    Instead, Defendants produced and presented the 2024 Version, which made material alterations to the Play.

30.    The 2024 Version cut characters from the Play.

31.    The 2024 Version cut and altered material from the Play, including but not limited to dialogue and songs.

32.    The changes to the Play in the 2024 Version were not authorized by the Authors.

33.    Defendants never requested Authors' permission to make the changes to the Play.

34.    After 2012, Authors never granted Defendants permission to make changes to the Play, and Authors did not grant Defendants permission to make the changes in the 2024 Version.

35.    Additionally, Defendants did not give Authors the required advance notice that they would be producing and presenting the 2024 Version in 2024, or where and when such production would be.

36.     On information and belief, Defendants did not create and exploit the 2024 Version in good faith.  On information and belief, Defendants put on the lower cost 2024 Version to purportedly extend the time under which Vital may collect royalties from Authors' disposition of Subsidiary Rights in the Play under section 13 of the Agreement.

## Count I – Copyright Infringement – The Play (Defendants)

37.     Plaintiff repeats and realleges paragraphs 1 through 36 herein.

38.     Defendants' 2024 Version was a material deviation of the Play in that it altered and/or cut material and characters that appear in the Play.

39.     Such alterations constitute an infringement of Authors' copyright in the Play.

40.     Defendants' 2024 Version of the Play constitutes an unauthorized "derivative work."  17 U.S.C. § 101.

41.     Condensing the Play by deleting material and/or characters is a substantial editorial revision and modification making the 2024 Version a derivative work for which Defendants did not obtain Authors' permission, as required by section 106 of the Copyright Act.

42.     Alternatively, Defendants breached a material condition of the Agreement by failing to ask for and obtain Authors' permission to modify the Play but nonetheless exploiting the 2024 Version, thereby exceeding the scope of the license in the Agreement and infringing Authors' copyright interests.

43.     On information and belief, Defendants' infringement of Authors' copyright interests in the Play was willful.

## Count II – Copyright Infringement – Original Off-Broadway Cast Recording (Defendants)

44.     Plaintiff repeats and realleges paragraphs 1 through 43 herein.

45.     On information and belief, Defendants copied, performed, published and prepared derivatives of the Original Off-Broadway Cast Recording, in part, in relation to advertisements and promotional materials relating to performances of the 2024 Version.

46.     Defendants did not ask for or obtain Authors' permission to copy, perform, publish, or prepare derivatives of the Original Off-Broadway Cast Recording, in whole or in part, in relation to advertisements and promotional materials relating to performances of the 2024 Version, thereby infringing Authors' exclusive copyright interests in the Original Off-Broadway Cast Recording.

47.     On information and belief, Defendants' infringement of Authors' copyright interests in the Original Off-Broadway Cast Recording was willful.

### Count III – Contributory Copyright Infringement (Sunderlin)

48.     Plaintiff repeats and realleges paragraphs 1 through 47 herein.

49.     On information and belief, Vital is a small non-profit theater producer, and at all relevant times Sunderlin has been Vital's Founding Producing Artistic Director.

50.     On information and belief, Vital is Sunderlin's alter-ego, and there is no material difference between the two.  For example, on information and belief, Sunderlin will at certain times conduct Vital business from his personal gmail account, list his personal address as Vital's address, and he is believed to otherwise ignore certain corporate formalities.

51.     Sunderlin directly controlled Vital's conduct, knew that the 2024 Version made material alterations to the Play, directed that those alterations be made, knew that advertisements and promotional materials were using the Original Off-Broadway Cast Recording without Authors' permission, and he directly and willfully contributed to the creation and production of

the 2024 Version and the advertising/promotional materials using the Original Off-Broadway

Cast Recording.

52.    On information and belief, (i) the 2024 Version could not and would not have

been prepared or presented without Sunderlin's direct knowledge and involvement, and (ii) the

advertising/promotional materials for the 2024 Version could not have used the Original Off-

Broadway Cast Recording without Sunderlin's direct knowledge and involvement.

53.    Sunderlin is liable for contributory copyright infringement of the Play.

54.    Sunderlin is liable for contributory copyright infringement of the Original Off-

Broadway Cast Recording.

## Count IV – Vicarious Copyright Infringement (Sunderlin)

55.    Plaintiff repeats and realleges paragraphs 1 through 54 herein.

56.    On information and belief, Vital is a small non-profit theater producer, and at all

relevant times Sunderlin has been Vital's Founding Producing Artistic Director.

57.    On information and belief, Vital is Sunderlin's alter-ego, and there is no material

difference between the two.  For example, on information and belief, Sunderlin will at certain

times conduct Vital business from his personal gmail account, lists his personal address as

Vital's address, and he is believed to otherwise ignore certain corporate formalties.

58.    On information and belief, Sunderlin had the ability to direct and control Vital,

including without limitation Vital's conduct with respect to the creation and exploitation of the

2024 Version.

59.    On information and belief, Sunderlin had a direct financial interest in the creation

and exploitation of the 2024 Version and the use of the Original Off-Broadway Recording in

relation to promotional materials for the 2024 Version.

60.     In addition to any revenues he received arising out of the 2024 production of the 2024 Version, Sunderlin also had a financial interest in (a) purportedly extending Vital's time to receive royalties from the Authors' exploitations of Subsidiary Rights, and (b) claiming to still have certain exclusive rights to present the Play.

61.     Sunderlin is liable for vicarious copyright infringement of the Play.

62.     Sunderlin is liable for vicarious copyright infringement of the Original Off-Broadway Cast Recording.

## Count V – Breach of Contract (Vital) (in the alternative)

63.     Plaintiff repeats and realleges paragraphs 1 through 36 herein.

64.     In the alternative to copyright infringement, Vital breached the Agreement by making material alterations to the Play without requesting and without obtaining Authors' permission.  Agreement, § 2.1 and 10.

65.     Vital breached the Agreement by failing to give the Authors advance notice of the 2024 production, including when and where it would be presented.  Agreement, § 5.2.

66.     Vital breached the Agreement by failing to pay any royalties to the Authors relating to the 2024 production.  Agreement, § 7.2

67.     Vital breached the Agreement by failing to give Authors the required opportunity to approve the cast and director of the 2024 production.  Agreement, § 9.

68.     Vital breached the Agreement by failing to give Authors proper credit. Agreement, § 11.

69.     Vital's breach of contract has caused Plaintiff damages in an amount to be determined.

70.     In addition to awarding Plaintiff monetary damages, as a result of Vital's breach of contract, the Agreement should be deemed terminated, including without limitation those provisions granting Vital a financial interest in Subsidiary Rights or otherwise in Authors' exploitations of the Play.

### Count VI – Declaratory Judgment / Termination of Agreement  (Defendants)

71.     Plaintiff repeats and realleges paragraphs 1 through 70 herein.

72.     There is a justiciable controversy whether the Agreement remains in effect due to Defendants' various acts of copyright infringement, or in the alternative for their various incurable material breaches of contract.

73.     As a remedy for Defendants' various acts of copyright infringement, or in the alternative for their various incurable material breaches of contract, the Court should enter a judgment declaring the Agreement is terminated and discharged, and that Defendants do not, *inter alia*, have any financial interest in, have the ability to control, and their permission is not needed in relation to, any exploitations of the Play, derivatives thereof, and Subsidiary Rights.

### Count VII – Declaratory Judgment / Termination of Exclusivity  (Defendants)

74.     Plaintiff repeats and realleges paragraphs 1 through 73 herein.

75.     On information and belief, Vital elected in its discretion not to produce the Play in one or more years during the 5-year exclusivity period provided in paragraph 5.2 of the Agreement.  Additionally, Vital failed to provide the notice required by paragraph 5.2 of the Agreement, and the initial 5-year period expired years ago.

76.     However, Defendants are still communicating that they have certain exclusive rights to the Play.

77.    There is a justiciable controversy whether the exclusive rights granted to Vital in paragraph 5.2 of the Agreement expired or otherwise whether the exclusivity converted to non-exclusivity based upon Vital's election not to produce the Play at relevant times.

78.    Defendants statements have caused confusion with third-parties and created a justiciable controversy as to whether Authors can exploit the Play without Vital's consent.

79.    The Court should enter a judgment declaring that any rights granted to Defendants in relation to the Play, including without limitation the right to present Subsequent Productions of the Play, are terminated or in the alternative are non-exclusive, and that (a) Authors may authorize exploitations of the Play without Defendants' permission or consent, (b) third-parties do not need to ask for or obtain Defendants' permission with respect to exploitations of the Play, and (c) Defendants are not entitled to receive any royalties from Subsidiary Rights or any exploitations of the Play by Authors or third-parties.

WHEREFORE, a judgment should be entered in favor of Plaintiff, and against Defendants:

a.      Pursuant to 17 U.S.C. § 502, enjoining Defendants and their agents, servants, and employees and all those in active concert or participation with them, from distributing, reproducing, displaying, performing, creating, and exploiting derivatives of both the Play and the Original Off-Broadway Cast Recording;

b.      Pursuant to 17 U.S.C. § 503, ordering the destruction or other reasonable disposition of all copies of the 2024 Version found to have been made or used in violation of the Authors' exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced;

c.      Pursuant to 17 U.S.C. § 504, awarding Plaintiff his actual damages and Defendants' profits attributable to the infringements, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504;

d.      Pursuant to 17 U.S.C. § 505, awarding Plaintiff his attorneys' fees and costs of suit;

e.      Awarding Plaintiff damages caused by Defendant's breach of contract, in an amount to be determined, plus interest;

f.      Declaring that the Agreement is terminated, and that Defendants, do not have any financial interest in, do not have the ability to control, and their permission is not needed in relation to, any exploitations of the Play, derivatives thereof, and Subsidiary Rights;

g.      Declaring that any rights granted to Defendants in relation to the Play, including without limitation the right to present Subsequent Productions of the Play, terminated or in the alternative are non-exclusive, and therefore (a) Authors may authorize exploitations of the Play without Defendants' permission or consent, (b) third-parties do not need to ask for or obtain

Defendants' permission with respect to exploitations of the Play, and (c) Defendants are not entitled to receive any royalties from Subsidiary Rights or any exploitations of the Play by Authors or third-parties;

h.    Awarding Plaintiff pre- and post-judgment interest at the highest legal rate allowed under the law; and

i.    Awarding Plaintiff such other and further relief as the Court deems just and proper.

Dated:  May 30, 2025

FIRESTONE GREENBERGER PLLC
*Attorneys for Plaintiff*

 /s/ Jordan Greenberger
Jordan Greenberger
104 West 40th Street, 4th Floor
New York, NY 10018
(212) 597-2255
jg@firegreenlaw.com