UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

DANNY ABOSCH,

                                   Plaintiff,

        -against-


VITAL THEATRE COMPANY, INC. and
STEPHEN SUNDERLIN,

                                   Defendants.

Case No. 1:25-cv-04522

## ORDER REGARDING ELECTRONIC DISCOVERY

WHEREAS, Plaintiff Danny Abosch ("Plaintiff") and Defendants Vital Theater

Company, Inc. and Stephen Sunderlin ("Defendants") have conferred and agree on the terms of

the following proposed Order Regarding Electronic Discovery for the preservation, collection,

and production of electronically stored information and documents in this action;

WHEREAS, the Court has found that good cause exists to issue this Order Regarding

Electronic Discovery (the "Order");

NOW, THEREFORE, it is hereby ordered that the following procedures and obligations

will govern the preservation, collection, and production of electronically stored information and

documents in this action.

1.     **General Obligations**

       **a.**     Except as specifically limited in this Order or otherwise by the Court, the

collection and production of Electronically Stored Information ("ESI") in this litigation will be

governed by this Order.

       **b.**     Plaintiff and Defendants (collectively, the "Parties") will cooperate and

use reasonable, good faith, and proportional efforts to preserve, identify, and produce relevant

1

ESI, including in complying with the procedures set forth in this Order.  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

   c.    Nothing in this Order will alter the Parties' responsibility to comply with the Federal Rules of Civil Procedure and Local Rules of the United States District Court for the Southern District of New York regarding the preservation, collection, and production of data and any other discoverable materials.  To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedure or other applicable laws or rules, those laws or rules will govern.  This Order will neither enlarge, reduce, nor otherwise affect the scope of discovery in this litigation as imposed by the Court's orders nor imply that discovery produced under this Order is properly discoverable, relevant, or admissible in this litigation.  If there is a conflict between the provisions of this Order and any order governing discovery in this litigation, including any applicable case management orders or the Stipulated Protective Order entered in this action, the provisions of those orders will control.

   d.    Nothing in this Order will be deemed to waive or limit any Party's right to object to production, discoverability, or confidentiality of data or any other discoverable materials.

   e.    To the extent compliance with this Order imposes an undue burden on either Party, the Parties will promptly confer to resolve the issue.

   f.    Consistent with their obligations under applicable Federal Rules of Civil Procedure and the Local Rules, the Parties will attempt to resolve, in writing (including email), or by telephone or videoconference, disputes arising from this Order before filing a motion with

the Court or otherwise seeking relief.  If the Parties cannot resolve the dispute after a good faith

efforts, the parties may seek Court intervention in accordance with the Court's procedures.

2.    **Preservation of ESI**.   Absent agreement of the Parties or further order of this

Court, the following provisions will apply regarding the preservation of ESI:

a.    Each Party has an obligation to take reasonable and proportional steps to

preserve discoverable information in the Party's possession, custody, or control.

b.    The Parties will meet and confer regarding any categories of ESI that are

claimed by a Party to be not reasonably accessible.

c.    Absent a showing of good cause, no Party need restore any form of media

upon which backup data is maintained in a Party's normal or allowed processes, including but

not limited to backup tapes, disks, SAN, and other forms of media, to comply with its discovery

obligations in the present case.

3.    **Collection of ESI**.   Absent agreement of the Parties or further order of this Court,

the following provisions will apply regarding the collection of ESI:

a.    **Scope of Discovery**.   The discovery requests will govern the scope of

documents to be produced, subject to any agreements reached during the Parties' conferral, and

search protocols do not supplant discovery requests.  Nothing in this provision is an agreement as

to the scope or appropriateness of each Party's discovery requests, and the Parties reserve the

right to object and respond to the discovery requests and may agree or disagree as to the scope of

each party's specific requests.

b.    **Identification of ESI Custodians**.  The Parties will, on or before thirty

(30) days from the entry of this Order, identify individuals whose files are most likely to contain

documents relating to the subject matter of this litigation.  The Parties will meet and confer in

good faith should any disagreement regarding custodians arise. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery and showing good cause, to each request additional custodians and will meet and confer regarding such request or identification.

c.      **ESI Sources**. The Parties agree for each custodian to conduct a reasonable search of ESI repositories where responsive communications likely exist. If either Party has a request or concern concerning a specific repository or the availability and/or production of ESI from a specific source, the Parties agree to meet and confer on the issue. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request or identify additional sources and will meet and confer regarding such request or identification. The Parties agree to propose initial search terms to apply to ESI Sources within twenty (20) days of entry of this Order, and to meet and confer on those search terms if necessary. The Parties agree that non-custodial ESI sources are not the subject of this Order.

d.      **Reasonable Best Efforts**. The Parties agree to use reasonable best efforts to identify custodians and employ search methods, including search protocols, designed to yield responsive ESI for review and production.

4.      **Search and Review of ESI**. Absent agreement of the Parties or further order of this Court, the following provisions will apply regarding the search and review of ESI:

a.      **General Standards**. The Parties will cooperate in good faith regarding the identification, disclosure, and formulation of appropriate date ranges, and custodial sources of ESI. All searches must be tailored to search for relevant material and proportional in nature.

**b.**      **Date Limitation**.  Neither Party is required to conduct a full-scale search for ESI created more than two (2) years before the filing of the Complaint (ECF No. 1).  The Parties will, however, cooperate with each other with respect to targeted searches of ESI from earlier periods; provided, however, that this cooperation obligation is without prejudice to a Party's right to object to conducing such searches.

**c.**      **Limitation on Searching Backup or Inaccessible Systems**.  Neither Party is required to search or collect materials from backup or archival systems and devices, including those listed in Appendix 1, absent good cause shown.  Neither Party is required to upgrade its technology suite for the purposes of document collection of discovery.

**d.**      **Continuing Obligations**.  The Parties will continue to meet and confer in good faith regarding any discovery-related issues as necessary and appropriate, including agreeing to modify any of the dates and time frames set forth in this Order.  This Order does not address or resolve any other objection to the scope of the Parties' respective discovery requests, and it does not prevent any Party from undertaking searches of its own ESI for its own purposes at any time.

5.      **Production of ESI**

**a.**      **Format of Production**.  All production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files.  Each image will have a file name that is the unique Bates number of that image.  Original document orientation should be maintained to the extent reasonably practicable and technologically possible for a Producing Party's vendor.  The imaged data will retain all attributes of the native file, such as document breaks, to the extent reasonably practicable.  To the extent reasonably practicable, produced TIFF images will show all text and

images that are visible, with the exception of redacted portions.  Hidden content, tracked changes or edits, comments, notes, and other similar information, to the extent available within a document in its native file format, will, to the extent reasonably practicable, also be imaged so that such content is viewable on the image file.  Documents that are difficult to produce in TIFF because of technical issues, or any other documents that are impracticable to produce in TIFF format, may be produced in their native format with a placeholder TIFF image stating, "Document Produced Natively."  The Producing Party retains the option to produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF formats.

   **b.**  **Format - Native Files**.  ESI will be produced as TIFF images consistent with the format described in § 5(a) with an accompanying load file, which will contain, among other data points, the ESI data points listed in the attached Appendix 1.  The exception to this rule will be spreadsheet-application files, personal databases, multimedia audio/visual files such as voice and video recordings, and any other file type that cannot be produced as TIFF images, for which all ESI items will be produced in native or other agreed upon format upon reasonable request.  When producing the above file types in native format, the Producing Party will produce a single-page TIFF slip sheet indicating that a native item was produced.  The corresponding load file will include NativeFile information for each native file that is produced.  Through the pendency of the litigation, the Producing Party will exercise reasonable, good faith efforts to maintain all preserved and produced native files in a manner that does not materially alter or modify the file or the metadata.

   **c.**  **Compressed File Types**.  Compressed file types (*e.g.*, .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted**.**

   **d.**  **Encryption**.  To maximize the security of information in transit, any media on which documents are produced may be encrypted.  In such cases, the Producing Party will transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

   **e.**  **Redactions**.  To the extent native spreadsheets require redactions, unless technologically unfeasible, a native redaction tool will be used to implement the redactions and will be produced in native format.

   **f.**  **Metadata**.  All ESI will be produced with a delimited, database load file that contains the metadata fields listed in the attached Appendix 1.  Such metadata will be provided to the extent it exists and can be reasonably retrieved.  The Parties are not required to create any metadata.

   **g.**  **De-Duplication**.  Each Party will remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level.  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  An email that includes content in the BCC or other blind copy field will not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical.  Removal of near-duplicate documents is not acceptable.  De-duplication should be done across the entire collection (global de-duplication).

   **h.**  **Email Threading**.  The Parties may use email thread suppression to avoid review of duplicate information.  Only the final-in-time email need be produced, provided that all content in previous emails, including attachments and all email recipients, is contained within the final email such that no unique content is removed as a result of the threading process.  For avoidance of doubt, if a thread member contains any additional data that is not contained in the

final-in-time email (including without limitation attachments and all email recipients), it must be separately produced.

i.      **Parent-Child Relationships**.  The Parties agree that if any part of an email or its attachments is responsive, the entire email and substantive attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege or work-product protection.  To the extent reasonably practicable and technologically possible, the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document will be preserved.  To the extent reasonably practicable and technologically possible without undue burden or cost, the child document should be consecutively produced immediately after the parent document.  Each document will be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

j.      **Password-Protected Files**.  The Parties will make reasonable efforts to ensure that encrypted or password-protected documents and ESI are opened and/or decrypted prior to running any search protocols and/or TAR so they can be successfully processed for review and production.  To the extent encrypted or password-protected Documents are successfully processed, the Parties have no duty to identify further the prior encrypted status of such Documents.  To the extent security protection for such Documents and ESI produced in document families cannot be successfully processed despite reasonable efforts, the Producing Party will produce a slip-sheet placeholder in place of the encrypted file and populate the "Withheld Placeholder" metadata field.

      **k.**     **Embedded Objects**. To the extent reasonably practicable and technologically possible without undue burden or cost, substantive embedded files will be produced as attachments to the document that contained the embedded file, with the parent-child relationship preserved. The substantive embedded files and the original document containing the embedded files will all be produced in accordance with the formats agreed upon herein (*e.g.*, Excel files as native files, etc.).

      **l.**     **Privileged Material**

         i.     Documents withheld from a production pursuant to attorney-client, work product, or other applicable privilege or immunity will be identified on a privilege log that complies with the requirements of Local Civil Rule 26.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York. Notwithstanding the foregoing, the parties agree that they will not be required to prepare and produce privilege logs with respect to communications dated after the filing of the complaint in this action or communications solely with their attorneys of record in this action, absent a showing of good cause.

      **m.**     **Privilege, No-Waiver, and Inadvertent Disclosure**

         i.     The mere production of ESI will not itself constitute a waiver for any purpose.

         ii.     The Parties have separately agreed to a Protective Order provision providing for protection under Federal Rule of Evidence 502(d). For the avoidance of doubt, that provision applies to ESI.

9

## APPENDIX 1

### ESI Metadata and Coding Fields

| Field Name[1] | Populated For (*Email, Edoc, Calendar, or All*) | Field Description |
|---|---|---|
| BegBates | All | Beginning page Bates number. |
| EndBates | All | Ending page Bates number |
| BegAttach | All | Beginning page of attachment range (First production Bates number of the first document of the family). |
| EndAttach | All | Ending page of attachment range (Last production Bates number of the last document of the family). |
| AttachmentCount | Email | The number of attachments to an email. |
| AttachName | Email | The file name(s) of attachments to a parent document (separated by a semicolon) |
| Custodian | All | Custodian name (ex. John Doe). |
| Hash Value | All | The MD5 or SHA-1 hash value. |
| NativeFile | All | Native File Link. |
| EmailSubject | Email | Subject line of email. |
| DateSent | Email | Date email was sent. (mm/dd/yyyy format) |
| TimeSent | Email | Time email was sent. |
| TimeZoneUsed[2] | All | Time zone used to process data during document collection and processing. |
| ReceiveTime | Email | Time email was received. |
| ReceiveDate | Email | Date email was received. (mm/dd/yyyy format) |
| DateMod | Email, Edoc | Date the document was modified. (mm/dd/yyyy hh:mm:ss format)[3] |

---

[1] Field Names can vary from system to system and even between different versions of systems. Thus, the Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this Order.

[2] ESI items should be processed in a matter that preserves their existing time, date, and time-zone metadata.

[3] ESI items will be processed as to preserve the date/time shown in the document as it was last saved, not the date of collection or processing.

10

| Field Name[1] | Populated For (*Email, Edoc, Calendar, or All*) | Field Description |
|---|---|---|
| To | Email | All recipients that were included on the "To" line of the email. |
| From | Email | The name and email address of the sender of the email. |
| CC | Email | All recipients that were included on the "CC" line of the email. |
| BCC | Email | All recipients that were included on the "BCC" line of the email. |
| DateCreated | Edoc | Date the document was created. (mm/dd/yyyy hh:mm:ss format) |
| FileName | Email, Edoc | File name of the edoc or email. |
| DocExt | Email, Edoc | File extension of the document. |
| File Size | Email, Edoc | Size (in kilobytes) of the source native file. |
| Title | Edoc | Any value populated in the Title field of the document properties. |
| Subject | Edoc | Any value populated in the Subject field of the document properties. |
| Author | Edoc | Any value populated in the Author field of the document properties. |
| TextPath | All | Relative path to the document level text file. |
| Redacted | All | "X," "Y," "Yes," and "True" are all acceptable indicators that the document is redacted.  Otherwise, blank. |
| Confidentiality | All | Indicates if document has been designated as "Confidential" or "Highly Confidential – Attorneys' Eyes Only" under the Protective Order. |
| Page Count | All | Indicates the number of pages within the document |
| Production Volume | All | Production Volume Name |

11

SO STIPULATED AND AGREED.

Dated: February 12, 2026
    New York, NY

                                  FIRESTONE GREENBERGER PLLC
                                  *Attorneys for Plaintiff Danny Abosch*

                                   /s/ Jordan Greenberger
                                   Jordan Greenberger (jg@firegreenlaw.com)
                                   Callie J. Kramsky (ck@firegreenlaw.com)
                                   104 West 40th Street, 4th Floor
                                   New York, NY 10018
                                   (212) 597-2255

Dated: February 12, 2026
    New York, NY

                                    BAKER HOSTETLER LLP
                                   *Attorneys for Defendants*

                                   /s/ Justin L. Ormand
                                   Justin L. Ormand
                                   45 Rockefeller Plaza
                                   New York, NY 10111
                                   (212) 589-4200
                                   jormand@bakerlaw.com

This agreement does not bind the Court or any of its personnel.  The Court can modify this stipulation at any time.  The Court will retain jurisdiction over the terms and conditions of this agreement only for the pendency of this litigation.

Dated:    February 13, 2026              SO ORDERED.
            New York, New York

                                   HON. KATHERINE POLK FAILLA
                                   UNITED STATES DISTRICT JUDGE

12